IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| EISSA LUTF ABDO SAEED ABULGHAITH,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN, MCCOOK; DIRECTOR, US ICE; SECRETARY, DHS; and DIRECTOR OMAHA FIELD OFFICE, ET AL,<br><br>Respondents. | **8:26CV690**<br><br>**MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** |

Petitioner Eissa Lutf Abdo Saeed Abulghaith, a citizen of Yemen, filed his second Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Second Petition), this time *pro se*, on November 6, 2026. Filing 1. On August 26, 2026, the Court denied Abulghaith's first Petition for Writ of Habeas Corpus Under U.S. Code Section 2241, which had been filed through counsel, after the Court had required a return from the Respondents and a Reply by Abulghaith's counsel, but without a hearing.[1] This time, the Court concludes that neither a hearing nor briefing is required and that Abulghaith's Second Petition is denied because it appears from the Second Petition that he is not entitled to a writ of habeas corpus. 28 U.S.C. § 2243.

## I. INTRODUCTION

In its ruling on Abulghaith's First Petition, the Court concluded that the only claim asserted that was cognizable under 28 U.S.C. § 2241 was Abulghaith's claim of "Violation of Fifth Amendment Right to Due Process" based on his continued custody. *Abulghaith*, 2026 WL 2517451, *4. However, the Court concluded that because Abulghaith's deportation proceedings were still pending and his detention was pursuant to 8 U.S.C. § 1225(b) there was no authorization

[1] *See Abulghaith v. Kolby Foote*, No. 7:26CV5015, 2026 WL 2517451 (D. Neb. Aug. 26, 2026).

for a bond hearing. *Id.* at *7. Consequently, the Court concluded that Abulghaith's detention during those proceedings did not violate due process. *Id.* at *8–9.

Because this is Abulghaith's Second Petition challenging his detention during immigration proceedings, the key question is what differs from his First Petition. Abulghaith attempts to answer that question:

> Since the denial of my prior habeas corpus petition, my detention has continued for several additional months, materially changing the factual and constitutional circumstances surround my confinement. Accordingly, this petition is based upon new and substantially changed circumstances rather than merely reasserting claims previously presented.

Filing 1 at 15. He provides slightly more insight into what he believes are the changed circumstances later in his Second Petition:

> My detention has continued well beyond the circumstances that existed when my prior habeas corpus petition was adjudicated. Since that time, two additional months of detention have elapsed, materially changing the factual and constitutional circumstances surrounding my continued confinement.

Filing 1 at 20. Nevertheless, Abulghaith also alleges that "[a]s of the filing of this petition, [his] immigration proceedings have not yet reached a final resolution before [the Board of Immigration Appeals (BIA)]." Filing 1 at 20.

Also, not unlike his First Petition, Abulghaith's Second Petition seeks the following relief:

> Through this action, I respectfully request that this court determine whether my continued detention remains constitutionally permissible under the Due Process Clause of the Fifth Amendment and grant appropriate relief, including my immediate release or, in the alternative, any other relief the court deems just and proper.

Filing 1 at 15–16. Where Abulghaith's First Petition contained only one cognizable claim for habeas relief, Abulghaith now asserts six overlapping claims.

Abulghaith's first claim—not expressly identified as Count I but set out as the first of his "Claims for Relief"—is again that "My Continued Immigration Detention Violates the Due

Process Clause of the Fifth Amendment." Filing 1 at 25 (reduced from all capitals). His Count II asserts "Materially Changed Circumstances Since the Prior Habeas Proceedings." Filing 1 at 29 (reduced from all capitals). This is clearly not a separate claim but an allegation of circumstances supporting the due process claim alleged in Count I, but the only changed circumstance identified in this part of the Second Petition is the length of Abulghaith's detention. Filing 1 at 29–32.

Abulghaith's Count III asserts "Traffic Violations Do Not Subject Me to Mandatory Detention," but the thrust of this claim is Abulghaith's contention that his detention is under 8 U.S.C. § 1226 not 8 U.S.C. § 1225(b). Filing 1 at 32 (reduced from all capitals), 32–36. That contention is contrary to his concession on or abandonment of the point in his First Petition. *See Abulgaith*, 2026 WL 2517451, at *3. Specifically, he now asserts,

> The difference between me and Avila [the petitioner in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026),] is that I was admitted after being inspected at the border. After being inspected and admitted I was released to the United States with a bond which is similar to conditional parole. Thus, my detention falls under 8 U.S.C. § 1226(a), which permits immediate release or bond for aliens.

Filing 1 at 33. Abulghaith's Count IV likewise asserts "§ 1226 Applies to Me Not § 1225." Filing 1 at 36. Much of his argument on this Count challenges arguments made by the Federal Respondents in response to his First Petition. Filing 1 at 38–40. Abulghaith's Count V asserts his "Conditional Parole Was Not Revoked." Filing 1 at 41. This Count also asserts that Abulghaith's warrant and Notice of Custody Determination both indicate that he was detained pursuant to § 1226. Filing 1 at 42–43.

Abulghaith's Count VI then reverts to his focus on his continued detention as violating due process. It asserts "The Government Cannot Continue My Indefinite Civil Detention Without Meaningful Constitutional Safeguards." Filing 1 at 49.

In short, the only real differences between Abulghaith's First Petition and his Second Petition are that a few extra months of detention have elapsed while his immigration proceedings

are pending and that he now disputes rather than concedes that § 1225(b) controls his detention. Neither provides a basis for a disposition of Abulghaith's Second Petition that is different from the disposition of his First Petition.

## II. LEGAL ANALYSIS

### A. Applicable Standards

As pertinent here, the habeas statute at issue, 28 U.S.C. § 2241, provides in pertinent part that a writ of habeas corpus extends to a person "in custody in violation of the Constitution or laws or treaties of the United States . . . ." 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that § 2241(c)(3) confers on a district court jurisdiction to hear habeas corpus challenges by aliens to the legality of their detention. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States .... Section 2241, by its terms, requires nothing more."); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases," which were brought by aliens challenging their detention after they were ordered removed (citing 28 U.S.C. § 2241(c)(3))). "The typical remedy for such detention [under § 2241(c)(3)] is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973), which states, "[T]he traditional function of the writ is to secure release from illegal custody").

"[A] habeas court is 'not bound in every case' to issue the writ." Id. (quoting Ex parte *Royall*, 117 U.S. 241, 251 (1886)). Instead, "[t]he habeas statute provides only that a writ of habeas corpus '*may* be granted.'" *Id.* (quoting 28 U.S.C. § 2241(a), with emphasis added by the Supreme Court). The applicable procedural statute for a writ of habeas corpus pursuant to § 2241 states in part,

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

28 U.S.C. § 2243. Thus, "[u]nder 28 U.S.C. § 2243, '[a] court, justice or judge entertaining an application for a writ of habeas corpus' must schedule a hearing on the matter unless it is clear from the application that a petitioner is not entitled to relief." *Crayton v. United States*, 27 F.4th 652, 656 (8th Cir. 2022).

Here, the Court concludes that even taken as true Abulghaith's allegations of fact fail to state a claim for habeas relief, so no hearing is required. *See Ruiz v. Norris*, 71 F.3d 1404, 1406–07 (8th Cir. 1995) (explaining that "an evidentiary hearing [in a habeas case] is unnecessary and not required in cases 'where the petitioner's allegations, even if true, fail to state a claim upon which habeas relief can be granted'" (quoting *Amos v. State*, 849 F.2d 1070, 1072 (8th Cir. 1988))). Therefore, the Court has considered Abulghaith's Second Petition without requiring a return from Respondents or a hearing.

Application of these standards demonstrates that Abulghaith is not entitled to habeas relief on his Second Petition.

### B. Additional Months of Detention Do Not Constitute a Due Process Violation

As the Court pointed out in its decision on Abulghaith's First Petition, in *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), the Eighth Circuit explained that "[t]he rule has been clear for decades: '[d]etention during deportation proceedings [i]s . . . constitutionally valid.'" *Banyee*, 115 F.4th at 931 (quoting *Demore v. Kim*, 538 U.S. 510, 523 (2003)). More specifically, *Banyee* clarified that the issue is not duration of detention but the "why" of detention and the further distinction between indefinite and definite detention. *See Banyee*, 115 F.4th at 932. In *Banyee*, the Eighth Circuit observed that "what matters is that detention pending deportation 'ha[s] a definite

termination point'—deporting or releasing the alien—making it 'materially different' from the 'potentially permanent' confinement authorized by other statutes." *Id.* (quoting *Demore*, 538 U.S. at 528-29). In Abulghaith's status and circumstance, where he is still subject to detention pending a final determination of removal, his detention still will definitely end, either with deportation or release. *Id.* His invocation of constitutional concerns with "indefinite" detention in his case are misplaced, even where he has been detained for an additional few months since the Court denied his First Petition. Further, while a showing that he is a danger or a flight risk warranting detention might be required in other circumstances to satisfy due process, such a showing is not required at this point where Abulghaith's removal action is still pending, his detention is not "indefinite," and there is no reason to believe that if he is ordered removed, that removal will not be accomplished within the reasonably foreseeable future.

Thus, Counts I, II, and VI of Abulghaith's Second Petition are denied. Abulghaith has failed to state a claim in these Counts upon which habeas relief can be granted, even in light of his allegations of additional months in immigration detention. *See Ruiz*, 71 F.3d at 1406–07 (explaining that "an evidentiary hearing [in a habeas case] is unnecessary and not required in cases 'where the petitioner's allegations, even if true, fail to state a claim upon which habeas relief can be granted'" (quoting *Amos*, 849 F.2d at 1072))).

### C. Abulghaith Is Detained Pursuant to § 1225(b) Not § 1226

In Counts III, IV, and V of his Second Petition, Abulghaith attempts to establish that he was detained pursuant to 8 U.S.C. § 1226 not pursuant to § 1225(b), despite having abandoned that argument in his First Petition. *See Abulgaith*, 2026 WL 2517451. Somewhat more specifically, he asserts that his traffic violations do not warrant mandatory detention pursuant to § 1225(b) (Count III); that application of § 1225(b) to him after his parole into the United States was incorrect

(Count IV); and that his parole was never properly revoked (Count V). These claims are also unavailing.

Abulghaith arrived in the United States at a port of entry and was not admitted, so he plainly fell within the definition of an "applicant for admission" as interpreted by the Eighth Circuit and thus subject to mandatory detention without bond under § 1225(b). *See Avila*, 170 F.4th at 1133. His release on bond in 2022 did not change his "applicant for admission" status, because parole under 8 U.S.C. § 1182(d)(5)(A), is not an "admission," and Abulghaith offers no argument why his release on bond should be any different. "[Section] 1225(b)(2)(A) authorizes detention without bond for 'an alien who is an applicant for admission, if . . . an alien seeking admission is not clearly and beyond a doubt entitled to be admitted.'" *Avila*, 170 F.4th at 1132 (quoting § 1225(b)(2)). Abulghaith still has not pointed to any determination by any DHS or ICE official that Abulghaith is clearly and beyond doubt entitled to be admitted.

Abulgaith's assertion that his traffic violations do not warrant mandatory detention simply misses the point. Abulghaith is not detained because of any traffic violations; rather, he is detained pending immigration proceedings, first to determine his removability and to consider his asylum claim then on the administrative appeal of the immigration judge's order for removal and denial of asylum. The Court explained above why such detention is pursuant to § 1225(b) because Abulghaith is an "applicant for admission." *Avila*, 170 F.4th at 1132–33. Also, neither the warrant for Abulghaith's arrest nor the Notice of Custody Determination demonstrates that Abulghaith's detention is pursuant to § 1226, as he contends. The warrant directs "[a]ny immigration officer authorized pursuant sections 236 and 287 of the Immigration and Nationality Act [8 U.S.C. § 1226 and § 1357, respectively,] and part 287 of title 8, Code of Federal Regulations, to serve warrants for immigration violations . . . to arrest and take into custody [Abulghaith]" for the stated reason of "the pendency of ongoing removal proceedings against the subject." Filing 1 at 79. Likewise,

the Notice of Custody Determination states, "Pursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations, [an authorized officer] ha[s] determined that, pending a final administrative determination in your case, you will be . . . Detained by the Department of Homeland Security." Filing 1 at 81. The references to persons authorized pursuant to "236 [§ 1226]" does not demonstrate that Abulghaith was detained pursuant to § 1226(a). Rather, they state that the immigration officers arresting and ordering his detention must be authorized pursuant to § 1226. Section 236 (§ 1226(a)) permits the arrest of an alien "[o]n a warrant issued by the Attorney General," but that authorization for arrest on a warrant does not establish that the alien is or is to be detained under § 1226(a) when arrested. 8 U.S.C. § 1226(a).

As to Abulghaith's contention that his parole was never revoked, Abulghaith does not dispute that at the time of his redetention in August 2025, ICE cancelled his bond and moved his case from "non-detained" to "detained" proceedings, nor could he. *See* Filing 1 at 83 (Notice of Custody Determination, stating in part, "ICE ERO cancelled ABULGHAITH's bond and will move ABULGHAITH's immigration case from non-detained proceedings to detained proceedings."). His argument that the cancellation was not by a properly authorized agent is frivolous.

Consequently, Counts III, IV, and V of Abulghaith's Second Petition are denied. Abulghaith has failed to state a claim in these Counts upon which habeas relief can be granted, even in light of his allegations. *See Ruiz*, 71 F.3d at 1406–07 (explaining that "an evidentiary hearing [in a habeas case] is unnecessary and not required in cases 'where the petitioner's allegations, even if true, fail to state a claim upon which habeas relief can be granted'" (quoting *Amos*, 849 F.2d at 1072))).

## III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Petitioner Eissa Lutf Abdo Saeed Abulghaith's *pro se* second Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, Filing 1, is denied in its entirety.

The Clerk of Court shall close the case.

Dated this 13th day of November, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge